WILLIAMS ENVIRONMENTAL LAW
LUCAS WILLIAMS (State Bar No. 264518)
JACOB JANZEN (State Bar No. 313474)
490 43rd Street, #23
Oakland, CA 94609
Telephone: (707) 849-5198
Facsimile: (510) 609-3360
lucas@williams-envirolaw.com
jake@williams-envirolaw.com

Attorneys for Plaintiff
ENVIRONMENTAL DEMOCRACY PROJECT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL DEMOCRACY PROJECT, a California not-for-profit corporation,<br><br>      Plaintiff,<br><br>  v.<br><br>AREA51ZERO LLC, a California Limited Liability Company; and DOES 1 through 20, inclusive,<br><br>      Defendants. | **COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF**<br><br>[Clean Air Act, 42 U.S.C. § 7604(a)] |

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF

**INTRODUCTION**

1. Defendant Area51Zero LLC (Defendant) is exposing a community in West Oakland to highly toxic diesel particulate matter in violation of the Clean Air Act. Defendant owns and operates an indoor cannabis cultivation facility located at 1696 West Grand Avenue, Oakland, California 94607 (the Facility). To supply the energy-intensive Facility with power, Defendant has been operating two massive diesel generators twenty-four hours a day, seven days a week, for the past year. The generators are the size of eighteen-wheeler trucks. In violation of the Clean Air Act, Defendant has not obtained air quality permits for the generators. Plaintiff Environmental Democracy Project, a non-profit environmental justice organization based in East Oakland (Plaintiff or EDP), seeks to put an immediate end to Defendant's Clean Air Act violations and to deter future violations.

2. Defendant's unpermitted generators have emitted tons of cancer-causing diesel particulate matter (DPM) and other pollutants that are inhaled deeply into the lungs of individuals living or working near the Facility. The Facility is located near businesses, a weekly farmers market, and numerous parks and playing fields. In addition, residents of the encampment for unhoused individuals living in vehicles and tents, located along Wood Street about 250 feet west of the Facility, are also exposed to the Facility's pollution. The generators' emissions are not mitigated by any pollution limits or control technology because Defendant failed to obtain air quality permits before operating the generators.

3. Defendant's failure to obtain air quality permits for the generators violates the Clean Air Act's preconstruction permitting requirements as set forth in the Bay Area Air Quality Management District's (the District) Regulation 2, Rules 1-301 and 1-302. These requirements are enforceable by citizens in federal court under the Clean Air Act's citizen suit provision. *See* 42 U.S.C. § 7604.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 2201 (actions for declaratory relief), and 42 U.S.C. § 7604(a) (the Clean Air Act's citizen suit provision).

5. Venue is proper in the Northern District of California under 42 U.S.C. § 7604 because the Facility—where the violations have occurred and continue to occur—is located in this District. In addition, Plaintiff's officers, who are directly impacted by the Facility's air pollution, live in this District.

6. On June 1, 2022, Plaintiff gave notice of Defendant's violations and Plaintiff's intent to file suit under the Clean Air Act. Plaintiff served notice by certified mail return receipt requested to Defendant, the Administrator of the United States Environmental Protection Agency (EPA), the Regional Administrator for Region IX of the Environmental Protection Agency, the District, and the California Air Resources Board. *See* 40 C.F.R. § 54.2(a)-(c). Plaintiff also mailed a copy of the notice to the Governor of California. *Id.* § 54.2(b). The notice of violation described in detail Defendant's Clean Air Act violations—*i.e.*, Defendant's failure to obtain an authority to construct and permit to operate for the diesel generators. Defendant did not respond to Plaintiff's notice of violation. The notice of violation is attached hereto as **Exhibit A.**

7. More than sixty days have passed since service of Plaintiff's notice of violation described above. Defendant remains in violation of the Clean Air Act. Neither the EPA, the state, nor the District have commenced and are diligently prosecuting a civil action in a court of the United States or any state to require compliance with the Clean Air Act. *See* 42 U.S.C. § 7604(b)(1)(B).

# PARTIES

8. Plaintiff Environmental Democracy Project is a 501(c)(3) nonprofit corporation dedicated to representing communities of color exposed to disproportionate amounts of pollution. EDP is based in East Oakland. Several of EDP's officers visit the area surrounding the Facility regularly and are exposed to the Facility's pollution.

9. Defendant AREA51ZERO LLC is a limited liability company organized under the laws of California. Defendant is an owner or operator of the unpermitted diesel generators that have been used at the Facility for approximately one year.

10. One of EDP's Board Members, Alistair Monroe, is an Oakland resident who visits the neighborhood surrounding the Facility regularly for both work and recreation. Mr. Monroe is injured by the increased health risks and poor air quality exacerbated by the Facility's unpermitted pollution.

11. EDP and its officers have been involved in community organizing, outreach, and public education efforts related to the unpermitted generator's impacts on health and the environment in the West Oakland community of color where they are located. EDP's officers have spoken at numerous public hearings in opposition to the problem of unpermitted generators in Oakland's communities of color.

12. The concrete interests EDP seeks to vindicate in this action—namely, addressing environmental racism, protecting air quality, ensuring compliance with environmental laws, and ensuring the public's right to participate in governmental decision-making processes—are within the purposes and goals of the organization. Plaintiff brings this action on behalf of itself and its officers and members.

13. Defendant's Clean Air Act violations pose an imminent threat to the health, happiness, and livelihood of Mr. Monroe, who visits the area surrounding the Facility regularly. The increased pollution and unregulated emissions of highly toxic chemicals—which could have been avoided had Defendant complied with the Clean Air Act—impact the health, economic, informational, organizational, and conservational interests of Mr.

1  Monroe and Plaintiff.  For instance, if Defendant had complied with Clean Air Act
2  permitting rules, the District could have required Defendant to conduct air quality
3  monitoring, thereby serving EDP's informational interest in providing impacted
4  communities with data concerning the quality of the air they breathe.  Thus, Plaintiff and
5  its members have been, and continue to be, adversely affected by Defendant's violations
6  of the Clean Air Act, which cause the emission of toxic air contaminants in the
7  community of color surrounding the Facility.

8  14.  Mr. Monroe has constitutional standing to sue individually under the Clean
9  Air Act for the violations alleged in this complaint.  Nevertheless, his individual
10 participation is not necessary for a just resolution of this case.

11 15.  EDP and Mr. Monroe are "persons" within the meaning of the Clean Air
12 Act, 42 U.S.C. § 7604(a).  Should the Court grant the relief requested by EDP in the
13 present action—civil penalties, injunctive relief, and declaratory relief—the harm to EDP,
14 and Mr. Monroe alleged in this complaint will be redressed, *i.e.*, by stopping the illegal
15 pollution and deterring future illegal pollution

## STATUTORY BACKGROUND

17 16.  Defendant's operation of massive unpermitted diesel generators violates the
18 Clean Air Act.  The Clean Air Act sets out a comprehensive regulatory scheme designed
19 to prevent and control air pollution.  Congress passed the Clean Air Act to prevent air
20 pollution and to protect and enhance the quality of the nation's air resources to promote
21 the public health and welfare.  42 U.S.C. § 7401.  The statute directs EPA to prescribe
22 national ambient air quality standards at a level sufficient to protect the public health and
23 welfare.  42 U.S.C. § 7409(a) & (b).

24 17.  The Clean Air Act is implemented jointly by the United States
25 Environmental Protection Agency (EPA) and the states.  The Clean Air Act requires each
26 state to adopt and submit to EPA for approval a State Implementation Plan (SIP).  42
27 U.S.C. § 7410.  SIPs provide the mechanism for states to ensure compliance with national

1  air quality standards. *Id.* § 7410(a)(2)(A), § 7502(c)(6). Once approved by EPA, SIPs
2  become federal law and are enforceable under the Clean Air Act. *See* 42 U.S.C. §§ 7413,
3  7604. EPA has approved elements of California's SIP, including each of the
4  preconstruction permitting requirements at issue in this case. *See* 40 C.F.R. §
5  52.220(c)(502)(i)(A)(1).

6   18.   The District is the governmental agency charged with the primary
7  responsibility for controlling air pollution from stationary sources in all or portions of the
8  nine Bay Area counties, including all of Alameda County, under the Clean Air Act. The
9  District's responsibility includes adopting and enforcing rules and regulations relating to
10 air pollution and maintaining healthy air quality. The District has not taken enforcement
11 action against Defendant, leaving enforcement responsibility to citizens. *See* 42 U.S.C. §
12 7604.

13  19.   The Clean Air Act authorizes any person to commence a civil action on her
14 own behalf against any person "who is alleged to have violated (if there is evidence that
15 alleged violation has been repeated) or to be in violation of . . . an emission standard or
16 limitation . . . ." 42 U.S.C. § 7604(a)(1). The terms "emission limitation" and "emission
17 standard" mean a requirement established by the the state or the EPA which limits the
18 quantity, rate, or concentration of emissions of air pollutants on a continuous basis,
19 including any requirement relating to the operation or maintenance of a source to assure
20 continuous emission reduction, and any design, equipment, work practice or operational
21 standard promulgated under this chapter. 42 U.S.C. § 7602(k). Preconstruction permits
22 such as an authority to construct and permit to operate under the District's rules are
23 emissions standards or limitations because, among other things, they allow the District to
24 impose pollution control conditions on facilities that emit pollutants.

25  20.   This Court has jurisdiction, without regard to the amount in controversy or
26 the citizenship of the parties, to enforce emission standards or limitations. 42 U.S.C. §
27 7604(a).
28

21. The District has established rules regarding preconstruction permits that are EPA-approved and federally-enforceable components of California's SIP.  40 C.F.R. § 52.220(c)(502)(i)(A)(1); *Revisions to California State Implementation Plan; Bay Area Air Quality Management District*, 83 Fed. Reg. 23372-01.[2]

22. The District's EPA-approved rules state that any person that puts in place any equipment that may cause the emission of an air pollutant must first obtain an "authority to construct."  District Regulation 2, Rule 1-301.  Likewise, the District's EPA-approved rules state that any person that operates any equipment that may cause the emission of air contaminants must first obtain a "permit to operate."  District Regulation 2, Rule 1-302.

23. These preconstruction permits are important because the District can impose conditions on the equipment "to ensure compliance with federal or California law or District regulations."  *See* District Regulation 2, Rule 1-403.  These conditions can include Best Available Control Technology or a Health Risk Assessment.

**THE POLLUTION FROM DEFENDANT'S GENERATORS IS HARMFUL TO HUMAN HEALTH AND AIR QUALITY**

24. The Facility's generators have emitted tons of DPM since they began operating approximately one year ago.  The generators have also emitted significant amounts of particulate matter, volatile organic compounds, nitrous oxides, and sulfur dioxide—harmful pollutants that create smog and exacerbate respiratory conditions.  The generators emit greenhouse gases as well.

25. The West Oakland community surrounding the Facility is predominately a community of color that already suffers from high rates of adverse health conditions, like asthma and cardiovascular disease, which are linked to the high levels of pollution in the area.  According to CalEnviroScreen 4.0, a screening tool created by the Office of

---

[2] *See also* EPA-Approved Bay Area Air District Regulations in the California SIP, https://www.epa.gov/sips-ca/epa-approved-bay-area-air-district-regulations-california-sip.

Environmental Health and Hazard Assessment to help identify communities disproportionately burdened by pollution and with population characteristics that make them more sensitive to pollution, the West Oakland community near the Facility is adversely affected by pollution to a greater extent than 91% of California. From DPM exposures alone, the community near the Facility suffers adverse effects greater than 98% of California.

26.  DPM is a chemical known to cause cancer under California law. 27 Cal. Code Regs. § 27001(b). DPM includes over forty substances that are listed by EPA as hazardous air pollutants and by the California Air Resources Board as toxic air contaminants. These highly toxic substances include acetaldehyde, antimony compounds, arsenic, benzene, beryllium compounds, bis(2- ethylhexyl) phthalate (DEHP), and dibenzofurans, formaldehyde, inorganic lead, mercury compounds, nickel, POM (including PAHs), and styrene.

27.  More than 90% of DPM is a thousand times smaller than the diameter of a human hair. DPM is inhaled by individuals and deposited in the deepest regions of the lungs where the lung is most susceptible to injury. DPM exposures cause negative health effects including premature death, hospitalizations, and emergency department visits for exacerbated chronic heart and lung disease, including asthma, increased respiratory symptoms, and decreased lung function in children.

28.  DPM emitted from the Facility is inhaled by individuals living and working in the area surrounding the Facility including Mr. Monroe, who is an officer of Plaintiff. He is exposed to harmful air pollutants as a direct result of Defendant's air emissions. The exposures threaten his health, and cause injury to his recreational and aesthetic interests. Mr. Monroe visits the neighborhood where the Facility is located at least weekly to, among other things, attend and work at the West Oakland Farmer's Market. The DPM fumes from the Facility negatively impact his enjoyment of the neighborhood and he is concerned about the impacts from the heightened exposures to DPM caused by

7
COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF

1   the Facility. Defendant's violations of the Clean Air Act directly injure Plaintiff by
2   polluting the air with dangerous and cancer-causing pollutants that impair Plaintiff's
3   members use and enjoyment of the ambient air.
4     29. Individuals living at the Wood Street encampment for the unhoused are
5   similarly exposed to harmful air pollution. The encampment is home to nearly 200
6   people. They have been exposed to cancer-causing pollutants from Defendant's Facility
7   for the past year.

### DEFENDANT'S CLEAN AIR ACT VIOLATIONS

  30. Defendant began operating large diesel generators in violation of the Clean Air Act in or around July 2021. The Facility failed to obtain an authority to construct or permit to operate before operating the generators. Defendant has been operating the generators all day, every day, for over one year.

  31. Defendant's conduct violates the Clean Air Act. Any person that puts in place any equipment that may cause the emission of air contaminants must first obtain an authority to construct. District Regulation 2, Rule 1-301. Defendant did not obtain an authority to construct prior to operating the massive diesel generators at the Facility. Defendant's failure to obtain an authority to construct violates the Clean Air Act.

  32. In addition, any person that operates any equipment that may cause the emission of air contaminants must first obtain a permit to operate. District Regulation 2, Rule 1-302. Defendant did not obtain a permit to operate prior to operating the massive diesel generators at the Facility. Defendant's failure to obtain a permit to operate violates the Clean Air Act.

  33. Portable generators cannot provide "primary power" to a facility without first obtaining an air quality permit from the District. 13 Cal. Code Regs. § 2453(m)(4)(E). Defendant's generator provides primary power to the Facility; and it has done so for more than one year. Defendant's use of the generator is not due to any

1  "unforeseen" power interruption or any other exception to the Clean Air Act's

2  preconstruction permit requirements.  *See* 13 Cal. Code Regs. § 2453(m)(4)(E)(1).

3      34.    Without the issuance of injunctive and declaratory relief and the assessment

4  of civil penalties, Defendant will continue to operate the unpermitted diesel generators,

5  releasing excess emissions of harmful pollutants to the further injury of Plaintiff and the

6  environment.

7      35.    The Court's issuance of injunctive and declaratory relief and imposition of

8  civil penalties is necessary to require Defendant to discontinue its current violations and

9  deter it from committing future ones—thereby redressing the injuries caused by

10 Defendant's violations.

## FIRST CAUSE OF ACTION

**Violations of the Clean Air Act, 42 U.S.C. § 7604(a);
Declaratory and Injunctive Relief and Civil Penalties**

1. Plaintiff realleges and incorporates by reference the paragraphs above.

2. Defendant has operated a diesel generator for approximately one year without having first obtained an authority to construct from the District. Defendant's failure to obtain an authority to construct violates District Regulation 2, Rule 1-301.

3. Defendant has operated a diesel generator for approximately one year without having first obtained a permit to operate from the District. Defendant's failure to obtain a permit to operate violates District Regulation 2, Rule 1-302.

4. The District's Regulation 2, Rule 1-301 and Regulation 2, Rule 1-302 have been approved by EPA as part of California's State Implementation Plan. The District's rules requiring polluting facilities to obtain authorities to construct and permits to operate are emissions standards and limitations under 42 U.S.C. § 7604(a). Thus, those rules are enforceable by citizens under 42 U.S.C. § 7604.

5. As a result of Defendant's failure to obtain an authority to construct or permit to operate, Plaintiff's officers and members have been, and continue to be, exposed to harmful air pollution that will increase the likelihood of health risks including cancer. The

Facility's pollution would have been controlled or curtailed if Defendant had complied with the Clean Air Act.

6. Defendant's violations are ongoing and will continue unless enjoined by the Court. Plaintiff is entitled to an order from this Court enjoining the use of the unpermitted generators.

7. Each day that Defendant operates the generators in violation of the Clean Air Act is a separate violation of the statute. Plaintiff is entitled to an award of civil penalties for each day Defendant operates the generators.

8. Plaintiff is entitled to a declaration from the Court that Defendant has failed to obtain Clean Air Act preconstruction permits for the diesel generators it has been operating and directing Defendant to cease use of the generators immediately.

Wherefore, Plaintiff prays for judgment against Defendant as set forth hereafter.

## **PRAYER FOR RELIEF**

A. A temporary restraining order, preliminary injunction, and permanent injunction requiring Defendant to immediately cease operating all unpermitted generators;

B. An order requiring Defendant to pay civil penalties in the maximum amount allowable under the Clean Air Act and an order that such civil penalties, in lieu of being deposited with the United States Treasury, be used in a beneficial mitigation project which enhances public health or the environment;

C. A declaration from the Court that Defendant is in violation of the Clean Air Act and District Rules for failure to obtain preconstruction permits for the generators;

D. An order requiring Defendant to pay Plaintiff's reasonable attorney fees and costs.

E. An order granting any other relief that may be just.

| | | |
|---|---|---|
| Dated: | August 18, 2022 | Respectfully submitted, |
| | | WILLIAMS ENVIRONMENTAL LAW |
| | | /s/ Lucas Williams |
| | | Lucas Williams |
| | | Attorneys for Defendant<br>ENVIRONMENTAL DEMOCRACY PROJECT |

COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL PENALTIES, AND DECLARATORY RELIEF